Your Honour, this is Hardeep Roy appearing on behalf of the... You'll have to speak up, Mr. Ray. Thank you, Your Honour. Move the microphone up a little bit. You'll have to understand that the acoustics are not very good. Yes, Your Honour. And if you think that microphone will get you, it will if you speak up into it. I will, Your Honour. But it's a mistake everybody makes. Don't worry. I'm Hardeep Roy, appearing for the petitioner of Ms. Sharma, Your Honour. We have three petitions. I'll address the oldest one, First Left Asylum. The board reversed the IG's negative credibility determination, but denied asylum on an on-account-of issue. We assert that the board's finding was erroneous and must be reversed. Sharma testified credibly that he was arrested, detained, threatened and beaten multiple times. The police falsely accused him and his family of supporting the terrorists, of supporting the Khalistan movement. This, in my opinion, is a case of imputed political opinion. He testified that the police has accused him and his father, both of helping the terrorists. And there's no evidence presented by the government to rebut the presumption. The board made a finding that the difficulty was with his father, who was doing research on the Sikh problem, and that the board made a finding that your client was just a pawn in between for them to get to the father. Now, you're charging that that finding is incorrect? Yes, Your Honour. Well, in our law, you have to show us enough, we give a lot of deference, that we're compelled to feel otherwise. What is there about this file that would cause the three of us to say we're compelled to find differently from what the board found? What's the facts which are so compelling? Your Honour, Sharma testified during the terrorist, while the police was beating him, they accused not just him helping his father, but they accused him that he's helping the terrorists, the Sikh terrorists, demanding Khalistan. Yes, the board says it was merely, and that's what the government's argument is also, that he was merely helping the father in the research, but that, in my opinion, is not correct, Your Honour. If that was the case, why would they repeatedly arrest him and beat him and still look for him even after he left the country? He, in his asylum proceedings, submitted affidavits from his father that showed that even after he left, the police had visited home and looked for him and threatened to kill him. Now, yes, the father stopped the publication of his book, and our contention is the father was more prominent, that it was hard for the police to target him, so they were targeting the son. But they were also imputing to the son his belief that he was helping, indeed helping the militants and their cause. So now, in my opinion, it's a case of imputed opinion, Your Honour. And considering the time, Your Honour, if I could move on to the second one, that is the motion to reopen that was denied based on his marriage to a US citizen. The board denied it, saying he did not present clear and convincing evidence. Mr. Sharma had only six weeks. The board denies his asylum case on December 1st. He gets married on January 12th. On February 24th, he files a motion to reopen. He only has 90 days to do that. Between his marriage and the date, he had, what, six weeks. And the board fails to realize that he's an illegal alien. He has no driver's license. He has no social security. No one's going to give him any lease agreement in his name. AT&T is not going to give him a phone connection. Banks aren't going to open an account for him. How is he going to get all these documents? But still, he manages to get some documents, which, in my opinion, establish... Well, it's more than established. At this stage, when a person marries or claims to be married validly, and they've already lost their case to leave the country, there's a presumption that it's not valid. And you can understand that presumption. So the board requires clear and convincing evidence of its validity. They didn't find it clear and convincing. Why were they wrong, that you did not show clear and convincing evidence? Why is that wrong? Subsequent evidence. The government subsequently approved this marriage petition, Your Honor. Though it took them four years, but eventually the marriage was found bona fide even by the government. He presented an affidavit from his mother-in-law. The wife's father is deceased. She is the only parent. The mother says this marriage is bona fide. A friend says that she knows about the marriage. Then he's himself given an affidavit. The board says he hasn't mentioned in detail how they met and what their previous relationship was. I believe he has in his affidavit. Mr. Sharma is a cashier working at some liquor store, and English is not his first language, but he has done his best in the affidavit to explain. Then, I believe there's two bills. He's got a joint bank account. Fine, there's only $100 in it, but how much money can you get? And there's two utility bills that show the same address. One is in the name of his spouse, and one is his name. His evidence is very analogous to Velarde's case, Your Honor. In Velarde's case, yes, he had a child. But they were married. They had known each other for six years. This man is only married for six weeks. Though he had known his wife since 2004, they got married in 2005. He did establish clear and convincing. Otherwise, the board is adjudicating the I-130, which is not their function. Counsel, the Sangha v. INS case is very similar here. People in India were punishing a son to get to the father. Relief wasn't granted in that case. And so, how do you distinguish the situations with the facts here? Here, they were also punishing him for his own beliefs, Your Honor, not just the father's beliefs. They also said that he believes in the cause of the Sikh militants or terrorists, and that he supports the demand for Khalistan, not just his father. And, if I may, Your Honor, there are only about two minutes left. In the motion to reopen on the marriage case, the board also says that the subsequent amendment to the lease is not signed by the landlord. But it's signed both by Mr. Sharma and his wife. And as a subsequent affidavit, which he submits with a motion to reconsider, he submits why the initial submission was not signed, because the landlord was out of town. Subsequent submission was signed by the landlord's agent, a Century 21 broker, and it was submitted with a motion to reconsider. But the board erroneously calls it a motion to reopen, and subject to the statutory limitations of time bar. You've got a little less than two minutes left. Do you want to reserve some time for a button? Yes, I will. All right. Very good. We'll hear from the government. Good morning, Your Honors, and may it please the Court. I'm Joshua Levin for the U.S. Department of Justice, here on behalf of the Attorney General. The board, in 2004, found that Mr. Sharma had failed to demonstrate that he had been persecuted on account of a protected ground. The board thus denied his application for asylum and withholding of removal, and it later denied his several motions to reopen based on his entry into a recent marriage. The board had ample bases to reject his asylum petition and his serial motions to reopen. As Judge Wallace's questions suggested, the board reasonably concluded that Mr. I didn't suggest. I asked a question. Very good, Your Honor. I'll build on the suggestion. Let me ask you this, because this is, I think, the key point that the Petitioner has set forth. In his testimony, which the BIA has deemed credible, he did testify that the police told him during his interrogations and beatings that he, both he and his father, were considered to be militants. Why isn't that enough? Your Honor, the case law really requires, I think, at the end of the day, a determination that the persecutors of this individual either understood or assumed and asserted, imputed, that a political opinion was held by him, and that was the basis for the injury they inflicted. Right, but he testified to that. I mean, he did say, I realize that he's also testifying about his father, but he did testify that when he was being beaten, they accused him, as well as his father, of assisting the militant Sikhs. Your Honor, it's certainly true that there is evidence that there was an assumption that Mr. Sharma's work was going to assist the Khalistan movement, just as Mr. Sharma's father's work clearly was feared to be doing that. And for that reason, they wanted very much to cut Mr. Sharma's work off at the past. Well, no, here's what he says at 331, which is page 41 of the transcript. They accused me and my father of helping the terrorists. That's what he says. Not only, I realize he's testifying about his father and he was helping his father and so forth, but the BIA seems to say there's no evidence on the record that they were persecuting him for imputed beliefs, only because he was helping his father. But at least there's one or two instances of the record where he says, when they were beating me, they said they were accusing me and my father of helping. So that's the trouble I have in the Board's blanket conclusion that there's no evidence. I understand that, Your Honor. The point remains, however, that because Mr. Sharma was helping his father and because the authorities plainly feared that Mr. Sharma's father was going to be helping the terrorists, the corollary is simply that they believed that Mr. Sharma was part of a mechanism that was going to be assisting the terrorists at the end of the day. There's no evidence at all that they asserted or assumed any political views. The help to the terrorists could have come in the form of the kind of computer data input that he provided. That plainly was something that they believed might be beneficial to the terrorists. That does not reach to the threshold imputation of political opinion that the case law at the end of the day still requires. What do you do with the statement that the Petitioner makes that there's been a threat made while he's been in the United States that if he comes back, his life will be taken? As our brief describes, that was hearsay evidence, Your Honor. And the case law does not require that that evidence, which was unsupported and uncorroborated, be accepted by either the Board or this Court as true. It can be accorded less weight, and the Board did accord that less weight, as this Court should also. I want to touch briefly on the key concept that the explicit statements of the persecutors should not be questioned in determining what their motivation is for attacking Mr. Sharma. This Court has ruled in the case last year in Zunle against Holder that the Court should not be second-guessing motivations of persecutors when they are explicitly stated. If this Court looks at the record, the quotes that Mr. Sharma provided, where he described what the motivations of the police were, are consistent, that their intention was to get the father to stop writing the book. And there's abundant citations in our brief to the parts of the record where that's clear. We have explicit statements where he's paraphrasing and quoting what the authorities said to him, and the Court cannot simply disregard that and overlook it in reaching to the conclusion that there's an imputed political opinion. Would you go back and answer to Judge Wallace's question? You said the Board rejected the testimony as hearsay and a less weight. Where is that in the opinion? I don't see it. I'll have to, if the Court would allow me a moment at the end of the argument, I can provide a citation. We certainly know that there was cross-examination about the absence of statements from the father to the effect. The affidavits that Mr. Sharma's father prepared, my understanding is those did not speak to the harm that remained. In fact, he was questioned about why his father did not address that in his statements, in his letters to Mr. Sharma. And Mr. Sharma's response is, well, maybe the harms came afterward. Maybe the threats occurred after Mr. Sharma's father had written to him. The testimony regarding future threats was based on Mr. Sharma's own representations, based on information he'd received, and it did not have the sort of ground-truthing that ---- I don't want to quibble with you, but you seem to be saying the Board rejected it. They didn't reject him on adverse credibility grounds. They didn't ---- they accepted what he said was true. As we know, the BIA accepts hearsay testimony all the time, and that's the nature of the proceedings. So I understand what the BIA is saying. I'm not quite sure I agree with the gloss you're putting on it. All right. Well, even if that's the case, Your Honor, the Board's opinion at the end of the day still identifies the basis for the conclusion that Mr. Sharma did not have a well-founded fear of persecution upon return. Significantly, as our brief notes, Mr. Sharma's father has continued to work in the faculty in peace. There was an eight-year gap between the time when he was detained and harassed by the police and the time that Mr. Sharma himself experienced difficulty. The fact is that the evidence, substantial evidence, supports the conclusion that Mr. Sharma did not face a fear or a well-founded fear of persecution if he were returned. Can we turn to the motion to reopen? Yes, Your Honor, you can. My question on that was how do you distinguish ---- on one side we have sort of boundary cases on the marriage issue, and, of course, it has to be proven by clear and convincing evidence. But I looked at Damon, and this seems pretty close to Damon. How do you distinguish Damon? Your Honor, I'm afraid I won't be able to. I'm not familiar with that matter. I can talk about the Mollie case, obviously, and I can distinguish a case from a couple years ago, the Ahmed case, which dealt with motions to reopen in the context of marriage and an I-130 petition. Well, then let me ask you a little broader question. What would he have had to show to meet his burden of proof? Well, the threshold, as the case law makes clear, is whether the evidence is probative of the motivation for marriage. Right. I'm just talking ---- You tendered a number of documents. We ---- you know, a lot of these cases we don't see these kind of documents. He did tender a lot of documents. What else would he have had to do, in your estimation, to satisfy his burden of proof? You know, I certainly can't second-guess or predict what threshold would be satisfactory to a prior fact. No, I understand that. But, I mean, I'm trying to ---- Because we're painting a little broader canvas here. Yeah. And you're not prepared to talk about Damon. So tell me, what do you think ---- what are the kind of documents, besides what he produced, that you would have to produce in order to get a hearing before the BIA on this issue? You know, I think motivation for marriage is a concept which implies the evidence pertaining to the decisions that go into a choice to marriage, to marry. Right. And they would have ---- they could have testified had the Board granted the motion to reopen. They wouldn't have had to necessarily. But so I'm just curious, what's the government's view of the threshold of documents you'd have to provide in order to satisfy the Board's standards on a motion to reopen? Well, I think it's acknowledged at the time the Board ruled on the third motion that the approval at the end of the day of the I-130 application was a significant piece of evidence that had hypothetically been available earlier with the approval. That would have been a substantial additional piece of evidence to support the motion. Right. But that wasn't going to happen in 90 days. That's why they have the presumption of clear and convincing, you know. The prior fact has got to evaluate the nature of affidavits, the nature of statements made on the stand or where that's relevant. In this case, Mr. Sharma might have provided simply a fuller explanation of the genesis of his relationship. Certainly, if you compare the facts here to the facts present in the Mollie case, the Board there reasonably concluded that the probative evidence just didn't exist, that simply wasn't satisfied. Suppose Mr. Sharma had been the researcher here instead of his father. Would he be eligible for asylum? Again, it would go to the statements and the link between his political activity and the existence of persecution. The mere fact that someone has an opinion doesn't necessarily per se mean that any injury he suffers is because of that political opinion. Well, let's take the hypothetical a bit farther. Let's say the father were here instead of the son. Is it your position that the police did not impute a political opinion to the father? That's a closer call, Your Honor. I don't know that I can comment on that. Certainly, if the father had been the one both writing the book and being persecuted and the comments by the police had gone to the fact that they wanted his book to stop, I think it would be certainly a much closer case, if not a clear-cut case, in favor of an asylum finding. But we simply don't have those facts here. Okay. I think we have your argument. Could I have a question? I'd like to slip it. And it's a question the record may show, but I just couldn't find it. The question is if the son were sent back to India. India is a big country. Whether or not if there are other parts of India in which he could live, even if he were under threat by the local police. And the argument is made that this fits into a case where there's a national police so that anywhere you go, you're under surveillance. My understanding is that India was a federation and that there are local police that are not national police. These appear to be those. But I couldn't find in the record where that had been demonstrated. Is there anything in the record about the local police that actually took him into custody as to whether or not they're a national police force or a local police force? And if so, what would it have to do with the findings in this case? Well, if that exists in the records, Your Honor, it would be contained in all likelihood in the country reports regarding from the Department of State regarding the state of human rights within the country. I don't believe there was testimony before the immigration judge on that question. And there certainly is a presumption that persecution in one place is often considered to be persecution throughout the country. However, it's fair to note that country conditions have markedly increased or improved since the record was closed and since this case was first heard. Perhaps the BIA didn't reach that issue, correct? I don't think it was reached. So, I mean, if we were to grant relief and send it back to the board, that's something that the government and the board could develop on remand. Right. I caution to say that I can't say that I've memorized the record with the thoroughness that would allow me to say that's not reached. Certainly, if the court were to reach that result, we would have to satisfy ourselves within the department that it was a correct finding. Right, right. Thank you, Your Honor. Thanks for the questions. For the foregoing reasons, I appreciate the Court's time and I request the Court affirm the Board's decisions. Thank you. You have a little less than two minutes for rebuttal. Thank you, Your Honor. You know, I agree with what the Court said. Mr. Shermer couldn't have done anything more to submit the evidence that he did submit in support of his marriage petition. He got everything he could in the short span he had. So how do you distinguish the case cited by the government? Excuse me, Your Honor? How do you distinguish? Let me ask you the reverse question. How do you distinguish your case from the ones that have been cited today in which we've affirmed the denial of the motion to reopen? Because Shermer is very analogous to Velarde, Your Honor. He submitted all the evidence that is there in Velarde's case. Only difference is he doesn't have a birth certificate of a child. Here he has evidence from the mother-in-law. And I have only a few seconds. Your Honor, as regards asylum, his credible testimony should be given full weight. In response to Judge Walz's question, India does not have local police, Your Honor. It's not a true federation. There's nothing in the evidence to show that. Do you have a citation in the record that had that?  I wondered if there was anything in the record on the issue, because the case was cited. How long has your client been in the country? Since 2001, I believe, Your Honor. Nine years. So he's been there for 19 years. This case, and if the government is talking about changed conditions, like the Court said, the case should still be remanded back to the BIA. Thank you. All right. Thank you for your argument. The case has been submitted for decision.
judges: Mills, Wallace, Thomas